### DUNCAN v. SOUTHERN RY.

Ruled by case of Fulmer *v.* Southern Railway *post.*

Before BENET, J., Barnwell, January, 1902. Reversed.

Action by J. T. Duncan against Southern Railway Co. From judgment for defendant, plaintiff appeals. Argued before Court *en banc* January 27, 1903.

*Messrs. Davis & Best* and *Jno. S. Reynolds,* for appellant, cite: *Charge of "excess fare" was unlawful:* 64 S. C., 242; 13 Am. & Eng. R. R. Cas., 31, 37. *Reasonableness of carrier's rule is a question of law:* 26 S. C., 91; 2 Am. & Eng. R. R. Cas. (N. C.), 4; 17 Ibid., 650; 158 Pa. St., 302; 81 Mich., 364; 31 Am. & Eng. R. R. Cas., 129; 25 S. C., 216; 29 S. C., 341; 42 S. C., 402.

*Messrs. B. L. Abney, Joseph W. Barnwell* and *Robert Aldrich,* contra, cite: *As to passenger rates in this State:* 18 Stat., 10; 91 Ill., 256; 18 S. C., 38; 18 Stat., 480, 759; 21

Stat., 8; 22 Stat., 116, 457. *As to repeals by implication:*
13 S. C., 394; 14 S. C., 166; 39 S. C., 5; Suth. on Stat.
Con., sec. 147; Sedg. on Con. of Stats., 2 ed., 106. *As to
rebate checks:* 26 S. C., 91; 62 S. C., 1; 131 Pa. St., 422.

July 29, 1903. The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY. This case is controlled by the case
of Samuel C. Fulmer *v.* Southern Ry. Co., in which the
opinion has just been filed.

It is the judgment of this Court, that the judgment of the
Circuit Court be reversed, and the case remanded to that
Court for a new trial.

MR. CHIEF JUSTICE POPE and CIRCUIT JUDGES JAMES
ALDRICH, ERNEST GARY, J. C. KLUGH, CHAS. G. DANTZ-
LER and R. O. PURDY, *concur.*

MESSRS. JUSTICES JONES and WOODS, and CIRCUIT
JUDGES D. A. TOWNSEND and GEO. W. GAGE, *dissent,* and
*concur in dissenting opinion of* MR. JUSTICE JONES.

MR. JUSTICE JONES, *dissenting.* This action was brought
to recover damages for an alleged unlawful ejection of plain-
tiff from the defendant's passenger train, in Barnwell
County, in May, 1901, and resulted in a verdict and judg-
ment for the defendant. It appears that plaintiff purchased
a ticket from Barnwell to Columbia and return over defend-
ant's line, and while returning to Barnwell from Columbia,
on the 11th day of May, presented the ticket to the con-
ductor, who refused to accept same on the ground that it
was not officially signed and stamped by the agent at Colum-
bia, as required by the terms of the ticket. The conductor
demanded of plaintiff the regular fare, $1.81, and 25 cents
excess with rebate privilege. After some discussion, plain-
tiff handed the conductor $5.00, as he claimed, for the pur-
pose of paying the regular fare and as claimed by the
conductor for the purpose of paying both regular and
"excess fare;" but before the conductor could make the
necessary change, plaintiff demanded back the $5.00, stating

17—67

that he would pay the regular fare but not the excess; whereupon the money was returned to him by the conductor, who informed him that he would have to put him off the train unless he paid the regular fare and excess. The plaintiff refusing to pay as demanded, the conductor stopped the train and put him off at Pelion, using no force beyond what the slight resistance of plaintiff required. Upon the trial, plaintiff's counsel abandoned any claim of right to recover because of the return ticket, which had not been identified or validated as required by its terms, and announced that plaintiff relied solely on their putting him off after he had tendered the regular fare. The exceptions are numerous, but appellant's counsel in their argument claim that the following questions are raised:

"1. That the defendant's charge of 25 cents in addition to the fare computed at the rate of three cents per mile, was contrary to the act of 1900 (23 Stats., 458), fixing the rate of passenger fare—this notwithstanding the tender to the passenger of a 'rebate check,' whereby the company agreed to return to the holder the sum so overpaid.

"2. That the trial Judge erred in charging the jury that the exaction of said additional sum, coupled with the giving of the 'rebate check' was not an extra charge.

"3. That the trial Judge erred in submitting to the jury the question whether the extra charge aforesaid was a reasonable regulation of the defendant company.

"4. That the trial Judge erred in suggesting to the jury a defense not set up in the answer and not arising out of the evidence—namely, that the plaintiff might have submitted to be ejected for the purpose of bringng a suit."

In response to respondent's requests to charge to the effect that the defendant company had the right, under the acts of 1884 and 1896, to make an absolute charge of twenty-five cents in excess of the regular fare upon those on train without tickets, provided the office for sale of tickets had been open for thirty minutes before the time fixed for departure of train, the learned trial Judge charged the jury in the fol-

lowing language, which is the basis of the exceptions which raise the first two questions above stated: "Counsel for the railway company hands up two requests to charge, which I refuse, because of my view of the law. They are based upon the acts of 1884 and 1896. I regard the act of 1900 as repealing the provisions of the acts of '84 and '96; so both these requests being based upon these statutes, will have to be refused. Gentlemen, give me your attention while I say something about these acts. There was an act passed in '84, to authorize railroads to charge—note the words, to charge twenty-five cents extra when the fare was not more than $2.50, and fifty cents extra when it was over that amount, in all cases when passengers get on at stations where tickets are offered for sale, and neglect or refuse to purchase tickets. That gave in '84 the right to railroads to charge this extra fare. That was an authority conferred in the section of an act which set forth how much the railroads should charge as a regular rate. That was in the act of 1884. In the act of 1896, power was given to the railroad commission to alter or change the rates fixed in this statute, fixing the rate per mile; and the reason that I have refused to charge counsel for the railway company in this case requests is, because the requests are based upon the two statutes. You heard counsel argue that the railroad commission having acted under the act of 1896, provided for charging extra rates, and, therefore, the railroad was doing what was lawful in charging the extra rate, twenty-five cents extra above the regular rate; my reason for doing so I found in the act of 1900, which reads, 'From sixty days after the approval of this act, the rate of transportation of passengers on all railroads, to whch the provisions of this act shall apply, shall not exceed three cents per mile traveled.' There is a distinct mandate, an order from the General Assembly, saying that from that time, from sixty days after the 19th day of February, 1900, the rate per mile shall not exceed three cents per mile. That clearly is not consistent with any other act that would provide for anything in excess of three cents per mile;

and the closing words of this act is, 'That all acts and parts of acts inconsistent with this act are hereby repealed.' I hold that any provision permitting the railroad, the provision of the act of 1884, which permitted the railroads to charge extra, and the act of 1896, which permitted the ralroad commssion to alter or change and thus increase, probably, the rate, has been repealed, because the act says in words that cannot be misunderstood, that after this act goes into operation, the rate shall not exceed three cents per mile. That is my reason for refusing to charge these requests of the defendant handed up in this case. But while that is the law, and I so charge you, you are to consider from the testimony whether in attempting to charge the plaintiff, as he alleges, twenty-five cents in addition—twenty-five cents in excess of the regular rate for passengers—whether that was, in its nature, an extra charge; was that intended to make him pay more for his journey from Columbia to Barnwell than otherwise? If that is shown from the testimony that the railroad company was endeavoring to put in its pocket twenty-five cents more than the law permits, then that was an unlawful effort to overcharge; but if, as is contended by the railroad company's counsel in this case, it was simply intended to be a check upon railroad passengers, to induce them to purchase tickets at railroad offices for the public convenience and the railroad convenience; or if it were, as contended, to be a check on dishonest conductors, to prevent them from collecting the fare and cheating the company out of the money; if that was the purpose of it, and if provisions were made, if the testimony shows you, as contended by the railroad company, that provisions were made, to return the twenty-five cents to the person paying it, then I charge you that that was no charge, in the sense of the law; it was no extra charge, it was not such a charge that would enrich the railroad; it was simply a means of identifying the fact that this man had paid money on the railroad train, and that the railroad company would give him the money, or indicate the manner in which he would have the money paid back; then, if that

be the case, I cannot hold that the charge of twenty-five cents extra was a charge or increase in the rates." This charge, I think, clearly and correctly stated the law for the reasons given therein, and for the reasons set forth in an opinion prepared by me in the case of Samuel B. Fulmer, by his guardian *ad litem, v.* Southern Railway Company, wherein a charge to the same effect by Judge Izlar is under review. The exceptions which raised the question stated in the two first propositions above should be overruled.

With reference to the third proposition by appellant, there was in the charge some language which indicated that the trial Judge thought that the reasonableness of the defendant company's regulations as to "excess fare" was a question for the jury, which was afterwards modified by stating that there was no allegation in the complaint that the regulation was unreasonable, but that the charge was unlawful; but we cannot see how the instructions in that regard were harmful to appellant, if instructions already considered above were correct.

The foundation for the tenth exception is the following charge: "If the testimony satisfies you of it, that as a passenger he refused to pay, and submitted to be put off for the purpose of bringing suit—if that is your view, then you would have to find for the railway company; if he simply refused to pay the twenty-five cents extra for the purpose of bringing an action for damages, then you readily find for the railroad company, and give him nothing." It is alleged that this was error, because there was no testimony upon this subject. There is no complaint that the charge was incorrect as matter of law, whether there was some evidence on the subject or not. We would probably not be willing to say that plaintiff's motion in refusing to pay and submitting to be put off would effect or control his right of recovery, if his ejection was unlawful, but the exception involves no such question. The exception assumes that the charge would be correct, if there was any testimony whatever from which the jury could infer that his refusal to pay was for the purpose

of bringing suit. · There was, doubtless, something in the circumstances which suggested the matter to the mind of the Judge. The action was for punitive damages for an alleged wilful wrong; and after reading the testimony, we cannot say that there was nothing therein from which the jury might infer that the refusal to pay was for the purpose of testing his supposed right by an action for damages. In any event, no harm was done the plaintiff, if the view be correct that the regulation as to the "excess fare" was reasonable, and not in conflict with the law of this State; for the ejection in that case would be lawful, if done in a proper manner, and no right to recover damages would exist.

Under these views the judgment of the Circuit Court should be affirmed.